**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **EAST CHICAGO GATEWAY PARTNERS, LLC,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 2:25 CV 477** |
| **W.R. GRACE & CO. -CONN,** | ) | |
| **Defendant.** | ) | |

**OPINION and ORDER**

This matter is before the court on defendant W.R. Grace & Co. – Conn.'s motion to compel arbitration and stay the litigation initiated by plaintiff East Chicago Gateway Partners, LLC. (DE # 7.) For the reasons that follow, the motion is granted with relief different than requested.

## I. BACKGROUND

### A. *The Parties' Agreements*

On June 28, 2000, defendant entered into a Ground Lease with E.I. du Pont de Nemours and Company, pursuant to which defendant leased more than 30 acres of land in East Chicago, Indiana. (DE # 9-3.) On June 28, 2018, the land, including the leased property, was conveyed to plaintiff by special warranty deed. (DE # 5 at 4.) Plaintiff was also assigned the Ground Lease (DE # 5-1 at 48), thus beginning the contractual relationship between plaintiff and defendant that is at issue in this suit.

#### 1. The Ground Lease

The Ground Lease governs, among other things, defendant's use of the leased

property, compliance with environmental laws, maintenance obligations, and default and termination provisions. (DE # 9-3.) The Ground Lease states: "This Ground Lease and the performance thereof shall be governed, interpreted, construed and regulated by the laws of the State of Indiana." (*Id.* at 29.) The Ground Lease does not contain an arbitration provision.

2. Amendment No. 1

On April 29, 2022, plaintiff and defendant entered into Amendment No. 1 to the Ground Lease ("Amendment No. 1"), which altered certain site boundaries and added limited related construction and redevelopment covenants. (DE # 9-4.) Under Amendment No. 1, plaintiff would: purchase a portion of the leased property, relocate defendant's rail spur and scale, would construct a new sewer line and pump house, and build and maintain a berm to redirect surface water runoff. (*Id.*)

Section 10 of Amendment No. 1 includes the only arbitration agreement between the parties, and states in relevant part: "Any dispute or controversy arising out of or relating to this Amendment, or any breach or alleged breach of this Amendment, shall be settled by arbitration (by a single arbitrator) to be held in the Borough of Manhattan in the City of New York in accordance with the rules then in effect of the American Arbitration Association . . .." (*Id.* at 8.)

Amendment No. 1 also contains an Entire Agreement clause which states:

> This Amendment and all Exhibits hereto, together with the Ground Lease, sets forth the entire agreement and understanding of the Parties with respect to the subject matter contained herein and in the Ground Lease, and supersedes all prior and contemporaneous understandings,

> agreements, representations, and warranties, both written and oral, with respect to such subject matter. . . . In the event of any inconsistency between the Ground Lease and this Amendment, the terms and conditions of this Amendment shall control.

(*Id.* at 9.)

Section 7 of Amendment No. 1 states that only Sections 4, 5, 8, and 18 of the Ground Lease are amended and that the Ground Lease "remains in full force and effect in accordance with its terms." (*Id.* at 8.)

*B. Arbitration Proceedings*

On September 19, 2025, defendant commenced arbitration proceedings against plaintiff with the American Arbitration Association ("AAA"), in case number 01-25-0004-7355. (DE # 9 at 1.) In its statement of its arbitration claim, defendant identifies four counts pursuant to which it seeks relief: (1) recovery of outstanding payments for purchased property under Amendment No. 1; (2) recovery for plaintiff's alleged failure to repair a broken sewer line; (3) recovery for plaintiff's alleged failure to perform construction outlined in Amendment No. 1; and (4) recovery for plaintiff's alleged breach of an implied covenant of quiet enjoyment. (DE # 9-1.)

The arbitration proceedings are ongoing. The AAA's Administrative Review Council has determined that: defendant has met the AAA's filing requirements; the arbitrator will determine the existence or validity of a contract of which an arbitration clause forms a part; and that the arbitrator will rule on objections to the arbitrability of a claim. (*See* DE # 39-1.) On March 13, 2026, the arbitrator stated that defendant's arbitration claims are within the scope of the arbitration clause, and that plaintiff's

objections to the jurisdiction of the arbitrator are not within the scope of the arbitration clause and are outside the scope of the arbitration. (*Id.*) On March 27, 2026, the arbitrator clarified during a status conference that its March 13th decision only found that defendant's claims under Amendment No. 1 are within the scope of the arbitration clause, and did not make any finding as to whether plaintiff's un-pled claims, defenses, and/or counterclaims are within the scope of the arbitration clause. (*See* DE # 42 at 4; DE # 41 at 2.)

### C. *Present Action*

Plaintiff originally filed this complaint against defendant in the Lake County Superior Court in Indiana, under cause number 45D01-2510-CT-001188. (DE # 5.) Plaintiff's complaint seeks a declaratory judgment and a stay of the arbitration proceedings commenced by defendant. (*Id.*) The complaint requests a declaratory judgment regarding: (1) whether a judge or an arbitrator should decide questions of arbitrability; and (2) which disputes, if any, raised by defendant in the arbitration are arbitrable. (*Id.* at 2.) Defendant removed the case to this court, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (DE # 1.)

Plaintiff argues that defendant's arbitration claims either arise out of obligations in the Ground Lease and are therefore not subject to Amendment No. 1's arbitration clause, or implicate potential (though unasserted) environmental claims or defenses that could be brought by plaintiff, governmental agencies, or private persons, and which should be resolved prior to defendant's contractual claims. (DE # 5 at 1-2.) Plaintiff

argues that these broader environmental disputes cannot be resolved through arbitration, but must be heard in federal court. (*Id.* at 7.) Plaintiff claims that proceeding with the arbitration before any (potential) environmental issues are resolved risks inadequate, incomplete, and/or inconsistent findings and rulings. (*Id.*)

Plaintiff's complaint asks this court to: (1) declare that this court, not the arbitrator, must decide issues of arbitrability and the scope of the arbitration clause; (2) declare that only disputes "arising out of or relating to" Amendment No. 1 are subject to arbitration, and that disputes arising under the Ground Lease or involving broader environmental contamination, governmental oversight, or statutory obligations are not arbitrable; (3) clarify which, if any, of defendant's claims are within the scope of the arbitration clause; and (4) permanently stay or enjoin arbitration of non-arbitrable claims and/or partially arbitrable claims until after the resolution of the environmental liability and related issues are determined. (*Id.* at 11.)

*D. Motion to Compel Arbitration*

In response to plaintiff's action, defendant filed the motion to compel arbitration that is now before this court. (DE # 7.) The matter is fully briefed and is ripe for ruling.

## II. LEGAL STANDARD

"The Federal Arbitration Act authorizes a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' to petition a federal court for an order directing that such arbitration proceed in the manner provided for in such agreement." *Bernal v. Kohl's Corp.*, 174 F.4th 573, 578 (7th Cir. 2026)

(cleaned up). "A party can compel arbitration under the Act by showing: (1) an enforceable written arbitration agreement; (2) a dispute falling within the agreement's scope; and (3) a refusal to arbitrate." *Id.* (citation omitted).

## III. ANALYSIS

The central dispute before the court is whether it is the court or the arbitrator who decides the scope of the arbitration clause. "[T]he question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). Parties may agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions. *Id.* "This additional step is often called a 'delegation provision,' because it reflects the parties' decision to delegate arbitrability to the arbitrator instead of having the courts decide." *Harris v. W6LS, Inc.*, 177 F.4th 777, 782 (7th Cir. 2026). The party seeking to enforce delegation has the burden of establishing the parties' intent to delegate. *Id.*

Courts must presume that the parties intend for the court to answer the question of arbitrability unless the parties' agreement delegates that question to an arbitrator by "clear and unmistakable evidence." *Bernal*, 174 F.4th at 578 (internal citations omitted). If the parties' contract delegates the arbitrability question to an arbitrator, the court may not decide the arbitrability question, even if the argument that the arbitration agreement applies to the particular dispute is wholly groundless. *Henry Schein, Inc.*, 586 U.S. at 65.

Defendant argues that the parties' agreement that any arbitration would be

governed by the AAA's rules (*see* DE # 9-4 at 8), operates as 'clear and unmistakable evidence' that the parties delegated arbitrability to the arbitrator. It appears that every federal appellate court to consider the issue, with the exception of the Seventh Circuit (which does not appear to have yet considered the question), has determined that the incorporation of the AAA's rules in an agreement provides 'clear and unmistakable evidence' of the parties' intent to delegate the question of arbitrability to the arbitrator.[1] *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases) ("[E]very one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.' "). Although the opinions of other circuits are not binding on this court, such a broad consensus carries considerable persuasive weight.

This consensus view finds its roots in AAA Commercial Rule 7(a), which expressly delegates arbitrability questions to the arbitrator. "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect

---

[1] Both parties erroneously assume that the Indiana Supreme Court's decision in *Illinois Cas. Co. v. B&S of Fort Wayne Inc.*, 235 N.E.3d 827 (Ind. 2024), is binding on this court with regard to the question of who determines arbitrability, the court or the arbitrator (though plaintiff argues that the case is factually distinguishable). *Illinois Cas. Co.*, is not binding authority with regard to this legal question. As the court itself acknowledged in *Illinois Cas. Co.*, "[t]ypically, state law provides courts with the rules of the road for interpreting arbitration agreements. State law also helps courts determine the validity of these agreements. But when the federal question of who decides arbitrability is presented, federal law commands the analysis." *Id.* at 833 (internal citations omitted). This perhaps explains why neither party mentioned the growing federal consensus on this issue.

to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." Am. Arb. Assoc., *Commercial Arbitration Rules and Mediation Procedures* (2026), https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf.

Following the appellate consensus, a similar consensus has developed among the district courts within this circuit. *See e.g. Beckett v. Bitcoin Depot, Inc.*, No. 1:25-CV-01450-TWP-MG, 2026 WL 541105, at *5–6 (S.D. Ind. Feb. 26, 2026); *Illinois Cas. Co. v. Meyers' G.M. Enters., Inc.*, No. 23-CV-487-WMC, 2025 WL 2322099, at *4 (W.D. Wis. Aug. 12, 2025); *Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*, No. 22-CV-2260, 2022 WL 2828751, at *4–5 (N.D. Ill. July 20, 2022); *Snow v. Pepsi MidAmerica Co.*, No. 21-CV-1206-DWD, 2022 WL 2106249, at *4 (S.D. Ill. June 10, 2022); *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank*, N.A., 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021); *Midwest Air Techs., Inc. v. JC US Inc.*, No. 21 C 337, 2021 WL 1688154, at *3 (N.D. Ill. Apr. 29, 2021); *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 700–01 (N.D. Ill. 2016); *Boehm v. Getty Images (US), Inc.*, No. 16-cv-311-jdp, 2016 WL 6110058, at *2 (W.D. Wis. Oct. 19, 2016).

While the Seventh Circuit has not weighed-in, it has noted that "agreement of the parties to have any arbitration governed by the rules of the AAA incorporate[s] those rules into the agreement." *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272 (7th Cir. 1976). This statement, along with the consensus of other courts on the issue,

persuades this court that incorporation of the AAA rules into a parties' arbitration agreement constitutes 'clear and unmistakable evidence' that the parties intend the arbitrator to decide questions of arbitrability.

Plaintiff argues that the Ground Lease and Amendment No. 1 are separate contracts and under *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), this court (not the arbitrator) must determine whether plaintiff's potential claims against defendant are subject to mandatory arbitration. (DE # 18 at 8.) Plaintiff believes that defendant's motion to compel hinges on whether the Ground Lease and Amendment No. 1 are one integrated contract or two separate contracts. (*Id.*)

In *Coinbase*, the parties executed two contracts, the first of which contained an arbitration provision with a delegation clause, requiring that all disputes be submitted to arbitration. *Coinbase, Inc.*, 602 U.S. at 145. The second contract contained a forum selection clause, requiring that all disputes be decided in California courts. *Id.* The question before the Supreme Court was "who—a judge or an arbitrator—should decide whether a subsequent contract supersedes an earlier arbitration agreement that contains a delegation clause." *Id.* at 147. The Court held that this question, involving which contract governed, must be decided by a court. *Id.* at 150, 152.

*Coinbase* is not applicable to the dispute in this case. First, plaintiff provides no legal analysis as to why the agreements should be considered two separate contracts. *See Jackson v. City of Madison*, 176 F.4th 1005, 1016 (7th Cir. 2026) ("[U]nderdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]"

(cleaned up)); *Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1438 (7th Cir. 1993) ("The characterization of a pair of documents as one contract or two cannot ordinarily be determined merely by gazing at them unless they *say* they are one contract or two, which in this case they don't. One must look behind the face of the contracts." (emphasis in original)).

Second, plaintiff's arguments are based on the *scope* of the arbitration agreement, not the agreement's continued validity, as was the case in *Coinbase*. It is undisputed that at least some of the claims at issue between the parties *are* governed by the arbitration clause. As this court has already determined, any remaining questions regarding the arbitrability of the remaining claims must be left to the arbitrator. Having made this determination, the court "may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 586 U.S. at 68.

Finally, plaintiff argues that there may be regulatory issues or citizen suits that arise under the Ground Lease, and because parallel proceedings could risk duplicative litigation, inconsistent findings, and other inefficiencies (DE # 18 at 12), this court should stay all arbitration proceedings. Again, these are merely hypothetical claims, and plaintiff cites no legal authority by which these potential issues grant this court the authority to ignore the arbitration clause.

Defendant asks this court to compel arbitration, and this court agrees that the arbitrability of the parties' claims are for the arbitrator to determine. However, this court cannot compel arbitration because the parties' arbitration clause mandates

arbitration in New York. *See Garage Door Sys., LLC v. Blue Giant Equip. Corp.*, 134 F.4th 953, 957 (7th Cir. 2025) ("Our circuit has generally interpreted the authority to compel arbitration under [9 U.S.C. § 4] as geographically limited, meaning a district court cannot compel arbitration outside the confines of its district."). "[W]hen a district court lacks authority to compel arbitration in the designated arbitral forum, parties may enforce the agreement through either a motion to dismiss for forum non conveniens or, when applicable, a motion to transfer venue to a district court that does have authority to compel arbitration." *Id.* at 958.

Neither party addresses this issue in their briefs. The parties will be granted time to file any appropriate motion on this issue.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS with relief different than requested** defendant W.R. Grace & Co. -Conn.'s motion to compel arbitration. (DE # 7.) The parties are **ORDERED** to file any additional motion, as set forth above, within 30 days.

**SO ORDERED.**

Date: September 17, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT